May it please the Court, Joe Guerra for AT&T Corporation. In resolving this appeal, Your Honors, this Court should not follow the decision in Pallas v. Pacific Bell because two intervening lies of Supreme Court authority have demonstrated, first, that Pallas necessarily gave improper retroactive effect to the Pregnancy Discrimination Act of 1979, and second, that Pallas necessarily relied on a now-invalid continuing violation theory in finding the claims that issue in that case timely. If we follow Pallas, who wins and who loses? If you follow Pallas, Your Honor, we lose. Aren't we bound by Pallas? I mean, can't that only be overturned by an en banc court? No, Your Honor. The Miller v. Gamme en banc case is very clear on this point in saying that when a Supreme Court decision has completely undermined or undercut the theory and reasoning of an earlier panel precedent, a subsequent panel, and even a district court for that matter, is no longer bound by that precedent and still obligated to … I tried that once. I said Circuit City has undone some opinion in our court, and it was a gigantic waste of time. It ended up in an en banc anyway. Well, Your Honor, others have already blazed this trail for you because at least two other panels have, in light of Landgraf itself, have essentially said we are not going to follow the logic of an earlier panel decision. We're going to decide for ourself whether or not the statute is being given retroactive effect. It turned out in the Northern Telecom case they concluded that the application wouldn't involve retroactivity, but the earlier panel had implied the statute retroactively, and the subsequent panel said we're looking at this de novo. And, Your Honor, it's also clear this Court, many panels since Landgraf have come down, have described how Landgraf has altered the legal landscape, how it was a significant shift in the legal reasoning. And so we submit that under the Miller v. Gamme en banc decision, you do have the authority to revisit those questions. To me, the problem, well, several points, but even assuming we could do that with Landgraf, the problem is that Powell has said that the relevant conduct was the decision after the enactment of the act in 1987 to adopt a benefit plan that didn't treat women who took pregnancy leave similarly to those who took disability leave similarly for other things. Right. And that has nothing, that arguably, and I think pretty clearly, doesn't even implicate Landgraf. I mean, there's nothing retroactive about that. Your Honor, I'd like to address that question. That is the heart of this case. And I think the problem here is that the palace's conclusion that the NCS system involved a facial discrimination is necessarily depend on retroactive application of the Pregnancy Discrimination Act. And if you give me an opportunity, I'd like to explain why that's so. Take all the opportunity you want, but the problem to me is its own decision about what the relevant conduct is. And once you – I may disagree with that, okay, but that's not the issue. Well, Your Honor, it's looking at post-enactment conduct. You're right. And it's saying this is the relevant conduct. Right. But what I'm saying is in finding that conduct to constitute an act of post-enactment discrimination, it had to have applied the PDA retroactively, and here's why. Prior to passage of that act, the service credit decisions that were made under the old Bell system plan were lawful. It was permissible to draw distinctions based on pregnancy that did not violate Title VII. Those decisions were lawful. So in order for reliance on a pre-enactment decision that was lawful to now constitute unlawful discrimination, three things have to be true. One is the Pregnancy Discrimination Act has altered the legality of that earlier legal decision. Second, the Pregnancy Discrimination Act – and this is probably the clearest evidence for why this is a retroactive application – the Pregnancy Discrimination Act is effectively saying you could use those pre-enactment decisions without legal liability up until the date of the PDA took effect. After the PDA takes effect, that exact same reliance on those decisions is now unlawful. That is retroactive effect. And finally, the PDA, the Palace decision is necessarily concluding that you now have to – new duties have been imposed with respect to fully completed decisions. Those decisions were lawful. Time was excluded from service credit. After the PDA takes effect, according to Palace, that time has to be added back in. That's adding in. That's entirely correct, and Palace can still have done what it did, which is to say that the act was the decision made after the act was enacted. But, Your Honor, the – And you freshly made the decision to discriminate. I mean, that's what Palace said, whether it's right, wrong, or indifferent, so far as this panel is concerned. Whether it was right before Landgraf, Landgraf illustrates how that conclusion has to entail retroactive application of the PDA. The way – You are at liberty, once you reach – once you recognize that fact, to reconsider Palace, because that conclusion in necessary retroactive enforcement is not binding on this Court in light of the subsequent Landgraf decision. Mr. Guerra, is that – do I have that right? You do, Your Honor. Mr. Guerra, the way the appellees finessed that issue is very interesting. Your logic seems to me to have some sense to it, but they finesse it by saying not that the pre-PDA acts were unlawful, which they would have to be under Title VII and weren't, but that the pre-PDA behavior, the counting, was discriminatory. Did you notice that? In their briefs, they constantly refer to the discriminatory behavior of the appellant in the way they had those rules prior to the PDA. That's a very interesting labeling problem, because it seems to me for your argument to prevail, we have to be prepared to say, assuming they are correct that it is discriminatory, it was discriminatory but not illegal or unlawful. Is that your position? That's correct, Your Honor. And that makes perfect sense. Discrimination is an English – is a word in the English language, and it means to draw distinctions, but it is now freighted in our – as lawyers since the 1960s and maybe since before then, but as a term of legal art. And I think you've put your finger on how they're trying to blur that distinction. To say what matters here is that it was not illegal discrimination before the PDA took effect. So it doesn't matter whether it was discriminatory or not. The question is whether it was unlawful to be PDA. Right. That's your argument. That's our argument. And you can't – it can't be unlawful to now rely on a previously lawful decision unless the Pregnancy Discrimination Act operated to render that earlier decision unlawful. And if I could point to the – to this Court's decision in Spink, this Court said in Spink if a statute requires you to include pre-enactment years of service in a benefit calculation, that statute is operating retroactively. And that is precisely what these plaintiffs are requiring, and that is precisely what Pallas required. And the Supreme Court – I know the Supreme Court overturned the ultimate result in that case. It did not disturb the reasoning as to the retroactivity, and, in fact, it endorsed it. Because what the Court said there was this statute – we look first to see whether Congress has told us how the statute should operate. It told us it applies prospectively. And then it said because it applies prospectively, there can be no employer liability for failure to have included pre-enactment years of service in the accrual decision. That's the exact other side of the coin of this Court's Spink conclusion. And so you have Spink from this Court, Lockheed from the Supreme Court telling you that when you – when you have to include pre-enactment years of service in a – in a subsequent post-enactment benefits calculation, you are applying the statute retroactively. That's what Pallas required. Now, Pallas may have said the relevant act here is post-enactment, but that doesn't change the fact that it gave retroactive effect to the statute. And if I could also, Judge Reimer, describe the situation to show why Pallas – the land-grant analysis demonstrates why Pallas misunderstood Bazemore. In Bazemore – Let me just reiterate. I'm not defending Pallas. I understand that, Your Honor, but I'm – but I'm – But – but I believe I'm stuck with it. I mean, that – there's a really very big difference. It doesn't mean that I would or might not support reconsidering Pallas in Bank, but I don't understand how this panel can just say it got it wrong, that it misread Bazemore. Sure, it may have. But we can't say we just disagree with the way it read it. No, but, Your Honor, that's not what we're asking this Court to do. What we're saying is if you look at the logic employed to conclude that post-enactment conduct constituted – the post-enactment decision constituted an act of discrimination, it necessarily – to reach that decision, it necessarily had to give the PDA retroactive effect. That's its reasoning. And what Miller v. Gamme says is when a subsequent Supreme Court decision undercuts, undermines the reasoning of a prior decision, even if the issues aren't identical, you are not bound by that decision. So that's why this isn't binding on you. That's why – so if you follow me in my argument for why this necessarily entailed a retroactive enforcement of the PDA, then Miller v. Gamme makes clear that since the decision is not binding on this Court. I don't think there's any dispute that the PDA was not intended to apply retroactively. And so, again, I would – I would ask that the Court focus on the logic that was necessary to reach the result of saying a post-enactment decision to simply rely on a previously lawful service credit calculation can now be deemed an act of discrimination. And there's no way around, I submit, the conclusion that you cannot reach that decision without implicitly understanding the PDA to have retroactively altered the legal – the legality of those pre-enactment decisions. That's flatly inconsistent with Landgraf. Or it's at least, I should say this, that Landgraf means that that was necessarily a retroactive application. And nobody's contending that that's permissible. If AT&T had adopted in 1987 wholly without regard to its past practices, it had just upped and adopted a new benefits calculation system which mirrored the previous one, there's no question that would have been unlawful at the time. That's correct, Your Honor. But it would have done it in 1987. But what Pallas said, as I read it, is that that's basically what happened. Again, I'm not defending that take for this purpose. My point is that's what it said. And so if that's what it said, we're now effectively – AT&T is now effectively adopting a new plan that is facially discriminatory now. What we said to that was that's illegal. But, Your Honor, you can't – you have to look at the reality of what the Court did. You can't just – if they said this is facial discrimination. But there's nothing on the face of the NCS system that distinguishes between gender and pregnancy. So you have to look at the old AT&T leave policies to find that distinction. And those policies were lawful. And it called – there's no dispute that what AT&T did in that case, what AT&T is doing here, is it's simply looking at the NCS date, and that date was calculated prior to enactment of the PDA. AT&T is not saying every day that we look at an NCS date, we are reinventing our old leave policies and applying them anew. It's simply saying what's your NCS date, and we're plugging it into this formula. And so the NCS date was itself decided – the significant decisions that affected these plaintiffs and the palace plaintiffs' NCS dates were all rendered in the 70s and 60s before the PDA took effect. The palace court can say we're looking at a present act of discrimination, but the reality of what it did inescapably is to say when you rely on a pre-enactment decision that was lawful, it's no longer lawful today. And if you do that, you are giving retroactive effect, and that is necessarily inconsistent with Landgraf, because Landgraf says you are not to give statutes retroactive effect unless Congress intends that effect. And there's no – every court that's addressed the question, including this one, has said Congress had no such intention. Your Honor, if I could also just – I would like to reserve some of my time for a moment to touch on the continuing violation theory as well, because their palace necessarily relied on such a theory in concluding that the violations there – the claims there were – But I had the same problem with that, because what it did was to identify discrete, relevant conduct as being the 1987 decision. But, Your Honor, the 1987 decision is simply giving effect to the earlier 1975 decision.  If you – I would call Your Honor's attention to the Ricks decision. There, this Delaware State allegedly discriminated against a professor in denying him tenure. They said you can work for another year. He worked that year. His contract ended. He was terminated. He then said, I'm suing based – I'm measuring my statute of limitations from the date of the termination. The Supreme Court said, no, no, no. The alleged discrimination happened when you were denied tenure. The mere – this – the fact that you then lost your job a year later, that's just an effect from that earlier decision, but it's not a new act of discrimination. And yet that's what, again, palace has necessarily said, well, we think this is a new act of discrimination. And what it's saying – when it says that, it's saying something that the Supreme Court has since said is an impermissible understanding of Title VII. I'd like to reserve the balance of my time. MS. MURPHY. Good morning, Your Honor. Suzanne Murphy of Weinberg, Rogers & Rosenfeld with the plaintiffs. I would like to begin by addressing Mr. Gore's point about the standard that some of the U.S. Supreme Court cases they've relied on, Landgraf and Morgan in particular, have completely undercut palace. I think that's clearly not the case. Landgraf does definitely refine and clarify some of the standards for retroactivity analysis, but Landgraf itself does not apply in this case. The type of statute that was in effect and challenged in that case clearly involved conduct that all was completed and predated the statute. In this case, and also the Spink case, is also distinguishable because it did not involve the seniority system in the first place, and the statute in that case that was effectively amended or repealed in 1988 was one that had very specifically and explicitly authorized a form of discrimination against employees who were hired after they were age 60 and could be excluded from a plan. Regardless of how this Court or the plaintiffs and the defendants may see the legality of the AT&T's policy before the PDA, it's not the same situation as was the case in Spink. Let me pursue that a little bit with you, Ms. Murphy. You do, I take it, concede that the pre-PDA practice of, I'll call it AT&T even though it was one of the baby bells, I think, that they've been involved in. Let's refer to it as AT&T's practice. You do concede that the pre-PDA practice was lawful. Well, Your Honor, we don't wholly concede that. There is some doubt about that question. The Carter case from the Southern District of Ohio in particular discussed this issue. Congress itself had some serious questions about Gilbert, and obviously, you know, the Supreme Court had the say on Gilbert, but we would also say that this case is more like Satie than it is like Gilbert. But we're not relying on the fact that the pre-PDA conduct was unlawful. But we are relying on the fact, we're relying on the part of Landgraf that says the mere fact that a statute draws on antecedent, on facts that predate the statute does not necessarily mean that it's a retroactive application of the statute. This is like Bazemore. That was the caveat tacked on after a long discourse on why retroactivity was not approved. But put that aside. For argument purposes, let's concede, may we, that the pre-PDA scoring by AT&T was lawful. For purposes of argument, certainly, Your Honor. Discriminatory, though it may have been in the general sense of discrimination, it was lawful behavior, right? Yes. For purposes of argument. Nobody challenged it within the statute of limitations. So, I mean, whether it was or wasn't, I mean, it's got to be taken as lawful, doesn't it? I mean, aren't we quibbling now over words? There's no challenge in this case to any conduct that was completed. So it's got to be taken as lawful for Judge Klager's purposes. Certainly. Okay. All right. Good. Then we don't have to keep saying, for purposes of this case. Assuming it was lawful, how does it become unlawful against your clients? Well, Your Honor, we would say that this is a Bazemore case and that nothing in Bazemore was disapproved by Landgraf or Spink or affected by those cases in any way. Don't hang labels on it. I don't understand all that Bazemore talk. How does it become unlawful? Well, it becomes unlawful the way the conduct in Bazemore continued to be unlawful after the enactment of Title VII or when Title VII became effective to public employers in 1972 by the fact that it was incorporated into and effectively re-adopted and became part of the test for which subsequent pension benefits determinations are made. And there is clearly a ---- This is your continuing wrong theory. Well, there is a semantic problem in this case about what's a continuing violation. There is the Morgan concept of that for acts that occurred before the statute, before the statutory limitations period in this case. We're clearly not challenging any conduct or transactions that occurred before the early mid-1990s when the first plaintiff in this case filed her charge. But we are challenging very discrete, individualized, current transactions that are made based on a fixed potentially discriminatory standard. Good. Let me pursue that if my colleagues will bear with me just a step further. And that is in the case that we all seem to be concerned about, which is Pallas. What the Court said was Pallas ---- this is not a belated attempt to litigate the discriminatory impact of a pre-pregnancy discrimination act program. Pallas challenges the criteria adopted in 1987 to determine eligibility for the new benefit program. Now, help me as I went through, as best I could, to look at the individuals before us, of which I think there are four. I was puzzled by what it was that they were concerned about. And what I would suggest that is take Ms. Hultine. I take it that what she's being denied is a calculation of her benefits and the benefits she received under her pension plan. That's correct. She was denied ---- Is that pension plan in effect prior to PDA? Yes. So it's not a new program. No. It is not in the same sense that Pallas referred to the program in that case being ---- But for Ms. Cullen was ---- No. Same thing. Same thing. Same thing for the other plaintiffs. The other plaintiffs. So none of these plaintiffs have in effect a new program that is being put into effect sometime in 1995. Is that correct? Well, Your Honor, the ---- there was a ---- That's a yes or no. I need to qualify that a little bit because there were discrete programs that Collette was voluntarily resigned under in 1998, and Snyder voluntarily resigned under a program that was offered in the year 2000. But the same exact type of pension benefits determination is made in all of those cases whether or not there's a discrete new program. See, the thing that caught my eye was that in Pallas it was a question of eligibility for a particular retirement program. But in each of these cases, it's not a question of eligibility for anything. It's simply a question of how you calculate preexisting retirement benefits, although in a ---- perhaps in one or another case that may have come up sooner than they would otherwise have expected because of the opportunity for which they qualified. There's no question that they were qualified for early out or whatever it is. That's correct. So the only issue in every case before us is benefits, which were key to a retirement program that was ---- am I right? That was in existence pre-PDA. The pension plan itself was in effect, yes. But in Pallas and in each of the four individual cases before you today, the critical problem was that each of the plaintiffs and Ms. Pallas were denied service credit in exactly the same way under the current application of the NCS system. In Ms. Pallas' case, it resulted in her not being eligible for an early retirement program. New program. Right. But in each of the plaintiffs in this case was specifically injured only at the time she applied for pension benefits in the mid-1990s and thereafter. And as described in the Mackey case, the cases that are cited in there, Auerbach and the Stewart case from this circuit, the claim for discrimination in the provision of retirement benefits is not ripe or even ready for adjudication until the time that the individual employee retires. A lot of things can change between the time an employee is first hired in the 1960s. The work history of the individual is very much parsed and relevant to the final determination. The determination isn't final or binding until the time that the employee actually applies for benefits, a benefits determination is made, and her pension benefits are thereafter fixed. So that's when the injury occurs. So you're suggesting, Ms. Murphy, that they could not have challenged the pre-PDA practice. Is that what you're suggesting? That is the import of the Mackey case, which adds another layer of analysis to Pallas, and I think that that's correct. But the only basis for challenging the pre-PDA practice was the PDA? I'm not sure I follow your question, Your Honor. If I understood you, you were saying that they could not have challenged the practice prior to PDA, their accounting practice, but they could challenge it later. They couldn't have challenged it with respect to pension benefits. There may have been other seniority decisions, more of the zero-sum type, promotions or job assignments, shift assignments, that sort of thing, that these female employees may have been harmed by because of the way AT&T calculated their NCS dates. But those aren't at issue in this case. That's not what we're after. The discrete discriminatory act or transaction in this case is the one that occurred as to each of these plaintiffs in 1994 through 2000 as to the individuals that they're harmed. When their benefits were actually taken down in dollars and cents. Right. And it's important to note, Your Honor, that the conduct in Baysmore that preceded Title VII, preceded the 1972 effective date for Title VII in that case, was perfectly legal in that case as well. The discrimination against the black employees in that case, in a segregated system, was perfectly lawful by the same standards that AT&T uses in this case. But that same, the salary structure that resulted from that pre-Title VII discrimination carried over into the salary structure post-Title VII in a similar way. It was built into and used as part of the compensation determinations that were made as to the employees who had been in the segregated units up to that point. And the Supreme Court in Baysmore held that the employer in that case, the public employer, had to eradicate the effects that were carried over and reincorporated and continued in effect after that date. There's nothing in Landgraf, there's nothing in Morgan, there's nothing in any of the U.S. Supreme Court cases cited by AT&T that affects the holding in Baysmore. And we would submit that that case, in addition to the fact that Landgraf, Spink, and the other cases on which the defendant relies, did not completely undercut Palace, that Palace continues to be good law in this circuit and that its reliance on Baysmore is the law of this circuit for the time being. And I will submit unless the panel has any further questions. Okay. Thank you. Your colleague, the EEOC. May it please the Court, my name is Paul Ramshaw for the EEOC as amicus. I want to try to address both the question about whether it was discriminatory and whether it had to be unlawful and the question of whether the retroactivity cases require you to reexamine Palace, with a hypo, if I may, that I think dramatizes what's going on here. Assume you've got a company that existed in the 60s and had a company-wide seniority basis. And before 1964 or 65, men got full one-to-one seniority and service credits. If they worked a year, they got a year of credit service and of seniority. And women only got a one-to-12. If they worked a year, they only got one month of service credit and seniority. In 1965, the company abolishes that old rule in order to conform with the Title VII and has a new rule that has no sex discrimination in it. But it continues to rely on the service dates that people have under the old system. Okay. Now, a year later, two people who have worked for this company for 35 years apply to retire, and the man can retire because he has 35 years of credited service and seniority, and the woman can't because she only has four years, in spite of having worked 35 years. What LeRont said, what Bazemore said is you can't continue after 1960, after Title VII comes into effect, just because it was okay for you to discriminate before Title VII was in effect, that doesn't mean you continue to rely on that. You now have to treat people equally. Even if you were paying blacks less, you now have to pay blacks the same. Even if you ---- You see, that's different because you're talking about a salary situation. Here you had basically vested benefit analysis. And when you make your decision after the law changes to bring yourself into compliance with it, then the company necessarily has to go back and rejig figures that it thought were over and done with calculations. I don't know how that's anything other than a retrospective recalculation of benefits. I mean, if we're going to talk the merits, which, believe me, I don't believe is on the table, I don't understand how you can possibly say that going back, forcing somebody to go back and rejig the benefit calculation. They didn't force the company to go back and rejig salaries. They just said you can't continue to pay at a discriminatory rate because as of this date, it's discriminatory, even though it wasn't last week. They didn't say go back and rejig your complete salary calculations for the last 20 years. They said you can no longer rely on the salaries that people had when the law changed. That's true, but I ---- And I think the same thing is true. They're saying you've got to go back and do a complete recalculation of benefits that weren't objected to, weren't complained about. Nobody squawked when the amended plan went into being, carrying those same figures forward. And so how is it anything other than going backwards and recalculating? Well, let me say I agree with your major premise that ---- Oh, I'm sure you do. But, I mean, you're the one who started down this path. And so the ---- if you think that the merits are on the table, then I think we've got a very different problem. I'm trying to show why ---- well, I agree with you that this panel should not reconsider Pallas, and I'm saying why you should ---- one of the reasons you should not reconsider Pallas is because Spink and Lockheed are not the only cases that the Supreme Court has decided since Pallas. You're saying Pallas is right? Yes. Yeah, Pallas is right because you've got a balance, Spink and Lockheed, with Regents Hospital. Where Congress in 86 changed how future graduate medical education costs would be reimbursed, according to what happened in 1984. And the secretary at the regulation said, okay, we're going to re-audit 84. And the court said that's not retroactive because you're not changing what these people are going to get reimbursed for in 84. You're changing what they're going to get reimbursed for later on. In 84, it's true they used the same rules when they re-audited, but that wasn't essential to the decision because Congress was changing the rules for future years. If your hypothetical is correct, going back for the moment to your hypothetical, is there ever a statute that is not retroactive? Yes, it would be. It would be not. It would be retroactive if a year after, if in 1965, the women sued and said, okay, we want all the jobs that we would have gotten, that we bid for, that we didn't get because we didn't have the right seniority. We want back pay for all those jobs. That would have been a retroactive application because you were saying what you did then, back then. But your hypothetical didn't have anything to do with jobs. Your hypothetical had to do with credit for work, for time, time in place. I meant my hypothetical to match what's going on here where the calculation of seniority controlled both those things. It controlled pension benefits, lots of benefit decisions, and it also controlled competitive job bidding. But did I misunderstand? I didn't think the suit before us had anything to do with job assignments. I thought it had to do with pension benefits. Yes, but, Your Honor, you asked me would a statute ever have retroactive effect, and I'm trying to say yes. If you were going back, if you were asking, if you were making the inquiry. If they raised a different kind of issue, a job, specific jobs, I didn't get my specific job, I don't know what the remedy for that would be. Okay. Whatever happened to Ameritech, the Seventh Circuit's decision? Nothing. You mean, you mean, what do I think of it or what happened to it after it was decided? It stands. Did it go to the Supreme Court? Was it turned down on a cert petition? It did not go to the Supreme Court. And I'm sorry, I don't know the history. My time is up. Okay. Thank you, Counsel. Mr. Verrera. Thank you, Your Honor. At the risk of violating a cardinal rule of appellate advocacy, I would just like to read from Miller v. GAMI, because the Court there said that where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling higher authority, I added the word higher for clarity, and should reject the prior circuit opinion as having been effectively overruled. We've all read that. How do you cope with Bazemore in what GAMI just said? Well, Your Honor, the problem here is that Bazemore, Judge Reimer's analysis of Bazemore is exactly right. Bazemore is saying from the minute we've outlawed this unlawful discrimination in salary, you can't pay people differently from that day forward. What Bazemore did not say is, and by the way, you have to go back and make up the salary differential for all those years that you paid prior to the enactment of the statute. And that's what we're talking about here. You've got seniority as a form of compensation. Since the day the PDA took effect, women and men have received the same form of seniority compensation under pregnancy and other disability leaves. That's the Bazemore analogy. What they're asking for is to go back and make up the salary differential in Bazemore by making up the difference in the service credit, which as Judge Reimer points out would significantly affect the benefit contributions that AT&T had to make. Those were done calculations. Those were liabilities in the plan. These are defined pension benefit plans. Now, years later, AT&T is told, guess what, you didn't include enough money in there because you calculated the service incorrectly. What do your forensic economists tell you this costs? I have not spoken to any forensic economists about that, Your Honor. And I believe the plan is currently overfunded, but that's not legally relevant because if the ---- I understand. I'm just curious exactly what this is all about. Your Honor, the other ---- If it doesn't cost you anything, you probably wouldn't care. We care deeply, so I assume it costs us ---- This is a class action, isn't it? It is a class action. That's correct, Your Honor. And the argument that Landgraf didn't address any post-enactment conduct and, therefore, has nothing to do with this case, and Spink was exactly that. In Spink you had the employer had excluded years of service for somebody who had joined the workforce over the age of 60. Congress passed a statute and said, henceforth, that is illegal. And this court said, if you have to go back and make an add-in service for the And then the Supreme Court said, this statute does not apply retroactively, it's prospective only, and, therefore, there can't be liability for your failure to go back and include the previously lawfully excluded years of service. So Landgraf is fundamentally inconsistent, as Spink understood it and understood it correctly, with Pallas, because Pallas is requiring precisely that conduct. But I hear them to say, whatever all that may be, Baysmore is our lodestone case. Your Honor, I hope I was — perhaps I wasn't clear enough before, but Baysmore is simply saying, from this day forward compensation shall be equal for blacks and whites. And it wasn't, because you paid people less. Remind me, in Baysmore, did that mean that they simply had to start paying equal pay as of — Yes. That point? That's exactly what it meant. Or did they have to adjust the basic salaries to bring them up and then make equal pay? Well, they had to — I'm not sure I understand the distinction. If you're saying, did they have to go back in time and make people whole for pre-Title VII service? Oh, did they have to — let's assume that the salary of a black as of the effective date was $100 and the salary of the white was $200 for the equal work, and it had been that way for years. As of the effective date, does Baysmore say you have to jump the black up to $200 and now pay equal pay? Or does it — did Baysmore simply say if everybody gets $10 more a week, the blacks have to get $10 more a week? Did they equalize salary? They required equalization. And that's what we have here. Before the PDA took effect, women who took pregnancy leave got only 30 days disability paid leave and 30 days service credit. And men who took disability leaves got all the time that they were out on disability leave. From the day the PDA took effect, give you that seniority credit as a form of compensation, that was completely equalized. What's at issue here is whether you have to go back and make up the difference in the pre-enactment years. Baysmore did not require that. Landgraf and its progeny make clear that doing that is retroactive. That's what Palace required. That's what they're seeking. Well, wait a minute. After the PDA, AT&T said for all future pregnancy leaves, we're going to treat it equally, right? As a disability leave. So equal with all other disabilities. See, Baysmore really falls somewhere in between this case. I mean, Baysmore doesn't quite square with your side any more than it does with their side, does it? Baysmore doesn't address explicitly my side, but no one understood Baysmore to be suggesting that the employer had to go back and pay for the salary differential lost due to the pre-enactment discrimination. They're saying that's what we have to do here and that somehow Baysmore compels that result. That's wrong. Well, Baysmore seems to say if you were doing something wrong in the past based on current standards and you're going to continue doing it in any way that carries that forward, it's out. Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII. So, I mean, and that's what they're saying. You know, our foot is still in the bucket based on what happened before the PDA. And every time you tell us something based on the past practice, you're doing it to us again. And isn't that what Baysmore is trying to get at? With respect, Your Honor, I don't believe it is. And I think Judge Reimer's analysis is exactly right. The distinction is between salary and pensions. Baysmore is saying Congress said from this day forward you public employers shall pay black and whites the same amount of money for the same work. And the employer in Baysmore said we're not doing that because we don't do that here. We've never done that and we're continuing our old practice of paying blacks less. And the Supreme Court said that's under Title VII and each paycheck is a new violation of Title VII because you're paying them less for the same work week after week after week. Since the PDA took effect, we have credited seniority, which is compensation, in exactly equal amounts for men and women who took disability leaves with no distinctions thrown on pregnancy. What they're saying is you have to equalize for the failure to credit us with service before the PDA took effect because that has continuing effects to us. And Spink said if you have to go back and include lawfully excluded pre-enactment service years under a statute, you are applying that statute retroactively. Nothing in Baysmore suggests that retroactivity is required under Title VII or any of its amendments. Okay. Thank you, Counsel. Thank you, Madam. All of you for your argument in this case. And the matter will be submitted to Senate recess for today.
judges: Trott, Rymer, Plager